UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TENNILLE R. OBO A.C.J., | § |
| | § |
| Plaintiff, | §     Case # 1:19-cv-1628-DB |
| | § |
| v. | §     MEMORANDUM DECISION |
| | §     AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | § |
| | § |
| Defendant. | § |

## INTRODUCTION

Plaintiff Tennille R. ("Plaintiff") brings this action on behalf of A.C.J., a child under the age of eighteen, pursuant to Title XVI of the Social Security Act (the "Act"). Plaintiff seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying A.C.J.'s application for supplemental security income ("SSI"). *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the case is before the undersigned in accordance with a standing order. *See* ECF No. 19. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 11, 15. Plaintiff also filed a reply. *See* ECF No. 16. For the reasons set forth below, Plaintiff's motion (ECF No. 11) is **DENIED**, and the Commissioner's motion (ECF No. 15) is **GRANTED**.

## BACKGROUND

On April 28, 2016, Plaintiff protectively filed an application for SSI child's benefits on behalf of her daughter, A.C.J., alleging disability beginning October 1, 2015. Transcript ("Tr.") 18, 120-26, 181. The application was initially denied August 5, 2016, after which Plaintiff timely requested a hearing. Tr. 18. On July 3, 2018, Administrative Law Judge David F. Neumann (the "ALJ") presided over a video hearing from Albany, New York. Tr. 18, 38-39. Plaintiff appeared and testified in Buffalo, New York, and was represented by Brian P. Kujawa ("Mr. Kujawa"), a

non-attorney representative. Tr. 18. A.C.J. also appeared and testified at the hearing. Tr. 40-57. On October 10, 2018, the ALJ issued an unfavorable decision, finding A.C.J. not disabled. Tr. 18-31. On October 2, 2019, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's October 10, 2018 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## **LEGAL STANDARD**

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

Individuals under eighteen years old are considered disabled when the individual "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i). In evaluating disability claims in children, the Commissioner is required to use the three-step process promulgated in 20 C.F.R. § 416.924. The first step requires the ALJ to

determine whether the child is engaged in "substantial gainful activity." *See* 20 C.F.R. § 416.924(a). The second step requires the ALJ to determine whether the child has any severe impairments, defined as anything that causes "more than minimal functional limitations." *Id*. Finally, the ALJ determines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of a listed impairment. *Id*. If the ALJ finds that the child's impairment or combination of impairments meets or equals a listing, the child is then considered disabled. 20 C.F.R. §§ 416.924(d)(1).

In determining whether the child's impairment or combination of impairments meets or medically equals a listing, the ALJ must assess the child's functioning in six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Health and physical well-being.

20 C.F.R. § 416.926a(b)(1). The child is classified as disabled if the child has a "marked" limitation in any two domains of functioning or an "extreme" limitation in any one domain. 20 C.F.R. §§ 416.926a(d). A "marked" limitation exists when the impairment or cumulative effect of the impairments "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is an impairment which "interferes very seriously" with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). If the child has an impairment that meets, and

medically or functionally equals the listings, and the impairment meets the Act's duration requirement, the ALJ will find the child disabled. 20 C.F.R. § 416.924(d).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed A.C.J.'s claim for benefits under the process described above and made the following findings in his October 10, 2018 decision:

1. The claimant was born on October 7, 2001. Therefore, she was an adolescent on April 28, 2016, the date application was filed, and is currently an adolescent (20 CFR 416.926a(g)(2));

2. The claimant has not engaged in substantial gainful activity since April 28, 2016, the application date (20 CFR 416.924(b) and 416.971 *et seq.*);

3. The claimant has the following severe impairments: major depressive disorder and anxiety disorder (20 CFR 416.924(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926);

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a);

6. The claimant has not been disabled, as defined in the Social Security Act, since April 28, 2016, the date the application was filed (20 CFR 416.924(a)).

Tr. 18-31.

Accordingly, the ALJ determined that, for the application for SSI, protectively filed on April 28, 2016, A.C.J. is not disabled under section 1614(a)(3)(C) of the Act. Tr. 31.

## ANALYSIS

Plaintiff asserts two points of error. Plaintiff argues that: (1) the ALJ failed to develop the record with missing education and care coordination records; and (2) the ALJ failed to properly evaluate Plaintiff's and A.C.J.'s credibility. *See* ECF No. 11-1 at 11-21.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v.*

*Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

As noted above, the ALJ found that A.C.J. did not meet or medically-equal a particular listing, and that A.C.J. did not satisfy the criteria for functional equivalence to a listing. Tr. 18-31. With respect to satisfying a listing through functional equivalence, the ALJ found that A.C.J. had a "less than marked" limitation or "no limitation" in each of the six domains: (1) Acquiring and Using Information; (2) Attending and Completing Tasks; (3) Interacting and Relating with Others; (4) Moving About and Manipulating Objects; (5) Caring for Yourself; and, (6) Health and Physical Well-Being. Tr. 23-30. Thus, the ALJ's findings in A.C.J.'s case direct a conclusion of "not disabled." *See* 20 C.F.R. § 416.926a(d) (unless a claimant has at least two "marked" or one "extreme" limitation in the six domains of functioning, he will be found "not disabled").

Plaintiff disagrees with the ALJ's decision but does not directly challenge the ALJ's finding that Plaintiff did not meet or medically equal a listing or the ALJ's findings at any of the six functional equivalence domains. *See generally* ECF No. 11-1. Rather, Plaintiff argues that the ALJ failed to develop the record and did not properly evaluate Plaintiff's and A.C.J.'s "credibility."[1] *See id*. at 15-21. Plaintiff's arguments are unpersuasive. Upon review of the record and the ALJ's decision, the Court finds that there were no obvious gaps in the record, and the ALJ's conclusion that A.C.J. did not have two marked limitations or one extreme limitation in the

---

[1] The Court notes that, although Plaintiff uses the term "credibility," the Agency abandoned the use of that term in March 2016. Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *1 (Eliminating "the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation.").

5

six domains described above was supported by substantial evidence. Furthermore, the ALJ discussed the relevant medical, school, and other evidence from the record, and gave good reasons to support his finding that Plaintiff's and A.C.J.'s subjective statements about the intensity, persistence, and limiting effects of A.C.J.'s symptoms were not consistent with the evidence, as discussed further below. Tr. 21-30.

For example, the ALJ discussed Plaintiff's psychological treatment, as well as the objective findings and observations of Plaintiff's treatment providers, including the largely unremarkable mental status examination findings, observations, and assessments of Carol Winkler, NP ("Ms. Winkler"). Tr. 21 (citing Tr. 294-322). As the ALJ noted, Ms. Winkler treated Plaintiff from in December 2015 to February 2016, when care was terminated due to A.C.J.'s failure to attend appointments. Tr. 21 (citing Tr. 294-322). The ALJ also discussed A.C.J.'s April 2016 hospitalization due to increased anxiety and suicidal ideation and noted A.C.J.'s improvement with a return to regular treatment and counseling. Tr. 22 (citing Tr. 323-70, 624-64). Improvement with treatment is a proper factor for the ALJ to consider in determining disability. *Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013) (unpublished).

The ALJ also considered A.C.J.'s outpatient treatment throughout the remainder of the relevant period, including largely unremarkable mental status examination findings; evidence of some improvement with medication; and the termination of A.C.J.'s treatment in January 2018, again due to her failure to attend scheduled appointments. Tr. 22 (citing Tr. 373-92, 426-588). The ALJ properly considered A.C.J.'s discharge from treatment for failure to attend her scheduled visits. *See* 20 C.F.R. § 416.929(c)(3)(iv)-(v) (in assessing symptom statements, the ALJ considers the type, frequency, and effectiveness of treatment sought); *Lee v. Colvin*, No. 13-CV-1151-JTC,

2015 WL 3505791, at *6, (W.D.N.Y. June 3, 2015) (an ALJ is permitted to "consider [a claimant's] noncompliance with treatment as a factor weighing against" her symptom testimony").

The ALJ's findings were also supported by the examination findings and opinions of school psychologist Joseph Mondo, M.A. ("Mr. Mondo"). Tr. 22, 155-58. In June 2016, Mr. Mondo administered intelligence testing, conducted a mental status examination, and reviewed A.C.J.'s school records. Tr. 155-58. The Wechsler Intelligence Scale for Children, Fifth Edition ("WISC-V") test showed that A.C.J. had a Verbal Comprehension IQ of 73, a Visual Spatial IQ of 72, a Fluid Reasoning IQ of 76, a Working Memory IQ of 74, a Processing Speed IQ of 95, and a Full Scale IQ of 73. Mr. Mondo also administered the Kaufman Test of Educational Achievement, which showed that A.C.J.'s reading scores were low average and her math scores were low. However, Mr. Mondo concluded that A.C.J.'s scores--though concerning—were "most likely lower estimates of her overall ability" because the assessment focused on grade-level material and A.C.J. had missed, or come in late, more than 50% of her freshmen year of high school, and a significant number of days in 8th grade. Tr. 157-58. He noted that A.C.J had 48 absences and 59 instances of tardiness during her freshman year, and 46 absences and 12 instances of tardiness during her eighth grade year. Tr. 155. Mr. Mondo concluded that A.C.J. did not have a learning disability and did not require special education services. Tr. 158. As the ALJ noted, Mr. Mondo's evaluation indicated that A.C.J.'s lower achievement in school was most likely due to a severe lack of instruction due to her excessive absenteeism. Tr. 22, 157-58.

The ALJ also gave weight to the July 2016 consultative examination findings and opinion of consulting psychiatric examiner Janine Ippolito, Psy.D. ("Dr. Ippolito"), and the opinion of state agency pediatric medical consultant T. Bruni, Ph.D. ("Dr. Bruni"), both of whom found that A.C.J.

7

did not meet or medically equal a listed impairment and did not satisfy the functional equivalence criteria. Tr. 22, 25, 62-67, 393-97.

The ALJ also properly considered the inconsistencies between Plaintiff's and A.C.J.'s subjective statements and the evidence of record. Tr. 24-25. Inconsistencies in the evidence, including a claimant's activities, can undermine a claimant's allegations of disabling limitations. *See Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (ALJ may rely on such activities to show that a claimant's allegation that she was disabled was not consistent with the medical and other evidence). For example, the ALJ noted that A.C.J. testified that she had anxiety when she is around people and had panic attacks; that she knew she should be taking medication every day, but only took it twice per week; and that she was able to work for about 16 hours each week at an elderly care center as a food preparer and kitchen helper. Tr. 24, 44-56. The ALJ also noted that Plaintiff alleged in a June 2016 Function Report that A.C.J. could not take care of many of her own personal needs and safety and could not pay attention and stick with tasks (Tr. 141-42), but A.C.J. testified that she had no problem with personal care and had the responsibility to watch her five year-old brother when he went outside to ride his bike and play (Tr. 50-51). Tr. 24.

The ALJ also compared Plaintiff's allegations regarding A.C.J.'s disability with the assessments completed by her teachers. Tr. 24, 161-68, 225-32, 281-88, 270-79. *See* 20 C.F.R. § 416.924a(a)(2)(i)-(iii), (b)(2) (in assessing a child claimant's disability allegations, the ALJ considers statements by the claimant and others who know her, including school teachers). Although some of A.C.J's teachers assessed mild and/or moderate limitations in the domains of acquiring and using information and attending and completing tasks (*see, e.g.*, Tr. 162-63, 226-27, 273-74, 282-83), the teachers largely struck a common chord in assessing the root cause of Plaintiff's problems, namely the excessive absenteeism noted by Mr. Mondo. Specifically:

- In a June 2016 assessment, Karen Riker ("Ms. Riker"), A.C.J.'s 9th grade Biology teacher noted that she had missed or been tardy a combined 100 days of her class during the school year. Tr. 161-63. Ms. Riker stated that A.C.J.'s problems "stem from attendance," which caused "content gaps" and "overwhelmed [A.C.J.] with the mounting tasks" she had missed. Tr. 163.

- In her May 2018 assessment, Alicia Monaco ("Ms. Monaco"), A.C.J.'s 10th and 11th grade English teacher, noted that A.C.J.'s reading and writing skills had fallen behind and she had to go to an after-school program to ensure she completed her homework assignments, which overwhelmed her. Tr. 226-27.

- In an undated assessment, A.C.J's 9th and 10th grade Science teacher (whose name was not provided on the assessment) noted that A.C.J. was "frequently absent and her mother pulls her out early upon her request regularly;" and "A.C.J. contacts [her] mother to pick her and her cousin up early, causing them to miss multiple classes." Tr. 272-73. The teacher also noted that A.C.J. "has excessive unexcused absences;" and her mother was not supporting Plaintiff's academic success. *Id*.

- In that same undated assessment, A.C.J.'s Science teacher opined that A.C.J. spent the majority of class complaining, talking excessively with her peers, on her phone, or wandering the hallway skipping class, but also noted that she was "very capable and independent" and "can perform above [the] majority of her peers when she actually applies herself." Tr. 275.

Thus, the evidence provided by Plaintiff's teachers, as well as the other evidence cited above, including the ALJ's assessment of the symptom statements made by Plaintiff and A.C.J., supports the ALJ's assessment of less-than-marked difficulties in the six functional domains. Tr. 24-25, 161-68, 225-32, 281-88, 270-79.

Plaintiff also argues that the ALJ did not develop the record. *See* ECF No. 11-1 at 11-15. However, Plaintiff mistakenly complains that some evidence actually contained in the record is missing and fails to show a reasonable possibility that the purportedly-missing evidence exists, or that the purportedly-missing evidence constituted a "gap" in the record that left the ALJ with an incomplete medical history. *See id*.

Upon review of the record, the Court finds there were no "obvious gaps" in the record, and the ALJ had substantial evidence to support his findings regarding Plaintiff's cognitive

functioning. *Peterson v. Berryhill*, 2018 WL 4232896 *4 (W.D.N.Y. 2018) (citing *Tatelman v. Colvin*, 296 F.Supp.3d 608, 612 (W.D.N.Y. 2017) (The ALJ's duty to develop the record is not infinite. When evidence in hand is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary.); *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996) (The ALJ was not required to further develop the record by seeking additional medical records where the evidence already in the record was "adequate for [the ALJ] to make a determination as to disability" *Rosa v. Callahan*, 168 F.3d at 79 n.5 ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim").

Five business days before the July 3, 2018 administrative hearing, Plaintiff's representative, Mr. Kujawa, informed the ALJ that he was attempting to obtain additional evidence. Tr. 280. *See* 20 C.F.R. § 416.1435 (Generally, claimants must submit all evidence no later than five business days prior to the date of the administrative hearing.) After sending that letter, but before the hearing was held, Mr. Kujawa submitted some of that pending evidence, specifically, a teacher assessment from Danielle Burns ("Ms. Burns"), A.C.J.'s 11th grade Global I & II teacher through June 2018. Tr. 281-88. At the hearing, the ALJ asked Mr. Kujawa if the record was complete, and Mr. Kujawa stated that the only records still missing were A.C.J.'s end-of-the-year school report card "and any notes from Jenna who is the [wrap] around preventive [*sic*] worker at Baker Victory Services".[2] Tr. 40-41. A.C.J's 2017-2018 school year records were submitted at the time of the hearing (*see* Tr. 289), and Mr. Kujawa stated that he would submit any

---

[2] The missing records from "Jenna" apparently refer to records from A.C.J.'s Home Care Coordinator Jena Draine-Moss ("Ms. Draine-Moss") from Baker Victory which wer briefly cited in Plaintiff's brief. *See* ECF No. 11-1 at 9 (citing Tr. 861, 865).

notes from "Jenna" within 10 days (*i.e.*, by Friday, July 13, 2018); the ALJ agreed to hold the record open for Mr. Kujawa to submit any additional evidence he obtained. Tr. 41, 56-57.

On July 12, 2018, Mr. Kujawa submitted a letter from Plaintiff (Tr. 290-93), but it does not appear that any further evidence was submitted after July 12, 2018, or at any other time during the three months before the ALJ's October 15, 2018 decision. Nor did Mr. Kujawa inform the ALJ that additional evidence existed, or that he needed the ALJ's assistance in obtaining it. On November 15, 2018 (after the ALJ issued his decision), Plaintiff retained Kenneth R. Hiller ("Mr. Hiller") as her representative. Tr. 14. Mr. Hiller's letter requesting review of the ALJ's decision by the Appeals Council likewise did not include any additional evidence to the Appeals Council or indicate that any evidence was missing from the administrative record. Tr. 117-18.

Plaintiff now faults the ALJ for failing to obtain that hypothetically-available evidence. *See* ECF No. 11-1 at 11-15. As discussed above, not only did Plaintiff fail to obtain and submit this allegedly missing evidence at any point during the administrative proceedings, she also failed to ask the ALJ's assistance in obtaining that evidence. Nor has Plaintiff obtained and submitted this allegedly missing evidence to this Court for its review. *See* 42 U.S.C. § 405(g) ("[t]he court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding").

Furthermore, the ALJ only needs to take action to develop the record when (1) the accumulated evidence is insufficient to make a disability determination, or (2) the accumulated evidence is inconsistent and the ALJ cannot resolve the inconsistency. *See* 20 C.F.R. § 416.920b(b); *see also Rosa*, 168 F.3d 72, 79 n.5 ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ

is under no obligation to seek additional information in advance of rejecting a benefits claim."); *see also Jordan v. Comm'r of Soc. Sec.*, 142 F. App'x 542, 543 (2d Cir. 2005) (unpublished) (Although an ALJ did not contact a medical source for updated record, the court found no error for failure to develop the record where claimant's counsel volunteered to obtain the records, the ALJ kept the record open to allow supplementation of the record, counsel did not subsequently indicate that necessary evidence was still outstanding, and the claimant did not request the ALJ's assistance in securing additional evidence). Thus, the ALJ did not err when he did not seek out and obtain the "wrap around services" records from "Jenna" that Plaintiff's representative said he would obtain, if such records were available.

Plaintiff's other complaints about allegedly missing evidence are similarly unpersuasive. For example, Plaintiff argues that the ALJ erred when he "made no effort to develop the record with missing education records from [A.C.J.'s] 2017-2018 and 2018-2019 school years." *See* ECF No. 11-1 at 11. However, , the record reflects that the ALJ considered detailed school records and other school-related evidence from the 2017-2018 school year, including the teacher assessments of Ms. Monaco and Ms. Burns (Tr. 225-32, 281-88) noted above, as well as various "incident" reports (Tr. 242, 265), absence reports (Tr. 243-46, 266-69), course progress reports (Tr. 253, 264), and a report card with test scores and grades for the fourth quarter of the 2017-2018 school year, which ran from April 23, 2018 to June 22, 2018 (Tr. 289). Given the extensive amount of 2017-2018 school year evidence, Plaintiff's complaint that such evidence was missing is meritless.

With respect to Plaintiff's argument about missing school records from the 2018-2019 school year, the administrative hearing was held in early July 2018, only a few weeks after the 2017-2018 school year had ended and well before the 2018-2019 school year began. Tr. 264, 266-69, 289. Moreover, the ALJ issued a decision in October 2018, less than six weeks after the 2018-

2019 school year began. Tr. 31. Plaintiff does not explain what evidence from that brief six-week period was needed to adjudicate this case. Furthermore, given the overwhelming evidence that A.C.J.'s academic difficulties were largely due to her excessive absenteeism from school, rather than any learning disability, as well as Plaintiff's failure to present evidence dispositive of disability from that time period to the Appeals Council, or to this Court, there is no reason to believe that any evidence from the 2018-2019 school year could form a basis for remanding this case.

Plaintiff also argues that there was no evidence of a psychological assessment to determine whether A.C.J. needed special education services, an IEP (Individualized Education Program), or some other special education-related services. *See* ECF No. 11-1 at 12. However, Plaintiff's argument conflicts with the record evidence—including the assessment of school psychologist Mr. Mondo, who opined that A.C.J. did not have a learning disability and did not require special education services (Tr. 155-58), as well as A.C.J.'s testimony denying that she received any special education services (Tr. 43). Therefore, Plaintiff's argument that this case should be remanded for the ALJ to obtain special education records fails, since the record does not indicate that any such records exist.

Plaintiff's argument that there *might* be evidence from the after-school homework group mentioned in the assessment of English teacher Ms. Monaco (Tr. 226-27) is similarly without merit. *See* ECF No. 11-1 at 1). The evidence of record shows that A.C.J. attended a once-per-week "[e]nrichment period after school to complete homework assignments." Plaintiff fails to explain how theoretical evidence from this after-school homework assistance program creates an "obvious gap[]" in the administrative record, or how, without this evidence the ALJ did not possess a "complete medical history," such that he was obligated to seek additional information prior to

adjudicating Plaintiff's claim. *Rosa*, 168 F.3d at 79 n.5; *see Morris v. Berryhill*, 721 F. App'x 25, 27-28 (2d Cir. 2018) (summary order) (explaining that the mere "theoretical possibility" of missing records that might be probative of disability "does not establish that the ALJ failed to develop a complete record").

Based on the foregoing, there is no merit to Plaintiff's argument that the ALJ failed to develop the record. The ALJ had a complete record before him, and, as detailed above, substantial evidence in the record supports the ALJ's decision. It is the ALJ's responsibility to weigh all evidence and resolve conflicts in the evidence. *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *Aponte v. Sec'y of HHS*, 728 F.2d 588, 591 (2d Cir. 1984); *see also Bethge v. Chater*, 896 F. Supp. 301, 317 (W.D.N.Y. 1995). Furthermore, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, No. 16-02672, 2018 WL 459678, at *3 (2d Cir. Jan. 18, 2018) (internal citations and quotations omitted). That is not the case here. The ALJ reasonably determined that A.C.J. did not have two marked limitations or one extreme limitation in functioning.

While Plaintiff may disagree with the ALJ's conclusions, her mere disagreement with the ALJ's findings does not warrant remand. Even if the evidence demonstrated some limitation in one of the domains, that would not be enough, as Plaintiff must produce evidence showing marked, *i.e.*, more than moderate, limitation in at least two functional domains. *See* 20 C.F.R. §§ 416.926a(d). The question is not whether there is evidence to support disability; it is whether there is "more than a scintilla" of evidence supporting the ALJ's decision. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). As noted above, there is such evidence here. Accordingly, the Court finds no error in the ALJ's determination that A.C.J. is not disabled.

## **CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 15) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE